WARREN C. WHITMAN *vs.* CHARLES L. JONES & another.

Suffolk.    October 7, 1947. — February 4, 1948.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Good Will.    Partnership*, Accounting.    *Equity Pleading and Practice*, Decree.

A judge, hearing a suit in equity for an accounting upon dissolution of a partnership engaged in a brokerage business in foods, was not required to find that the value of the good will, not specifically set out in an account submitted by the defendant to the plaintiff, was accounted for in an item therein entitled accounts receivable, which included estimated, but not stated, brokerage fees on unfilled orders without any deduction for expenses.

A partner, under a partnership agreement containing no provision as to good will on dissolution, is bound to account for the good will if, after the dissolution, he continues the business and appropriates the good will to his own use.

A final decree in a suit for an accounting, which merely established an indebtedness of the defendant to the plaintiff, was ordered modified by the addition of an order for the payment of that indebtedness.

BILL IN EQUITY, filed in the Superior Court on June 14, 1946.

The suit was heard by *Forte*, J.

*R. C. McKay*, for the defendant Jones.

*V. L. Hennessy*, for the plaintiff.

SPALDING, J.    This is an appeal by the defendant Jones, hereinafter called the defendant, from a final decree entered in a suit for a partnership accounting. [1]  The evidence is reported and the judge, at the defendant's request, reported the material facts found by him.

Facts found by the judge and those which we find (*Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178) may be summarized as follows: On November 1, 1945, the plaintiff and the defendant by an agreement in writing formed a partnership to carry on a brokerage business in food under the

_____

[1] The decree ordered the bill to be dismissed as to the defendant Weismann; the plaintiff did not appeal.

name of Jones-Whitman Company. The defendant prior
to that time had been engaged in that business for approxi-
mately thirty-five years and had built up a good will of sub-
stantial value. The plaintiff had been in the wholesale
food business for more than thirty years and had had some
experience as a food broker. At the time the partnership
agreement was executed the parties entered into another
agreement by the terms of which the plaintiff agreed to pay
to the defendant $5,000 in consideration of certain promises
on the part of the latter. These included a promise that the
defendant would execute and sign the partnership agree-
ment and would contribute to the capital of the partnership
an amount equal to that which the plaintiff was to contrib-
ute, namely, $2,500, and a promise that he would "turn
over to the . . . partnership all the good will of the business
which has been conducted in his individual capacity." In
•accordance with this agreement the plaintiff paid the de-
fendant $5,000 and the defendant transferred to the part-
nership the good will of his business, and each partner con-
tributed to the partnership as capital the sum of $2,500.
Sometime later each partner lent the firm $1,000.

It was provided in the partnership agreement that the
partnership could be dissolved "at any time by mutual
agreement of the parties." For reasons which are not here
material the parties agreed to dissolve the partnership as of
April 20, 1946. Thereafter the defendant, using the part-
nership assets, including the firm name, continued to carry
on at the same place the business which had formerly been
carried on by the partnership. The defendant did business
under the firm name until June 1, 1946, at which time he
formed a partnership with the defendant Weismann. There-
after the business was carried on under the name of Jones,
Weismann & Co. At about the time the new partnership
was formed the defendant rendered an account of the old
partnership to the plaintiff. The parties have stipulated
that the defendant owes the plaintiff the sum of $3,400 with
respect to the items set forth in the account. This sum is
made up of the cash contributed to the firm's capital by the
plaintiff, the amount of his loan, and his share of the net

profits (which included estimated brokerage fees on unfilled orders) less amounts which he had withdrawn. The judge found that the account submitted by the defendant was true except that it failed to account for the good will of the partnership; that the value of the good will at the time the partnership was dissolved was $10,000; and that the defendant was accountable to the plaintiff for one half of its value. A decree was entered which established an indebtedness on the part of the defendant to the plaintiff in the sum of $8,400.

The principal questions raised by this appeal arise from the findings of the trial judge with respect to good will. The defendant argues that in the account submitted to the plaintiff he accounted for good will, and that the judge's finding to the contrary is based on an erroneous construction of the account. The defendant further contends that the finding with respect to the value of the good will was erroneous in law and was unsupported by any evidence.

In support of the first contention the defendant argues that by including in the account brokerage fees on unfilled orders without any deduction for expenses he necessarily accounted for the good will. It appears that these fees were included in the account as part of the accounts receivable which were valued at $2,863.85. What portion of this sum represents brokerage fees on unfilled orders does not appear. In any event, the judge was not required to find that this constituted an accounting for the good will of the partnership.

We are of opinion that the judge's findings with respect to the value of good will cannot be said to be plainly wrong. The facts establish that the defendant transferred to the partnership "the good will of the business which had been conducted by him in his individual capacity." The judge therefore could find that the partnership possessed a good will at its inception and that this had not disappeared at the date of its dissolution. Possibly it could have been found that additional good will was acquired while the firm was in existence, even though that period was brief. But whether the partnership possessed any good will at

the time of its dissolution, and, if so, what its value was, were questions of fact. We lay to one side the contention of the plaintiff that the $5,000 paid to the defendant at the time the partnership was formed was payment for a one half interest in the good will which the defendant had built up in the business previously conducted by him individually. It is just as reasonable to infer that this sum was paid by the plaintiff for the privilege of entering into a partnership with one who had had greater experience in this type of business. But apart from this there was evidence that the good will of the partnership was worth at least $10,000 at the time of its dissolution. The weight and the credibility of this evidence were for the judge to determine. Concerning good will it has been said "that no specific rule can be laid down to ascertain its value but that each case must be decided in the light of its own particular facts." *Commissioner of Corporations & Taxation* v. *Ford Motor Co.* 308 Mass. 558, 571. This is not a case where the finding can be said to rest on nothing more than surmise and conjecture, as in *Murray* v. *Bateman*, 315 Mass. 113.

The defendant was under a duty to account for the good will to the plaintiff. The partnership agreement is silent on the subject of good will in the event of dissolution, except where that occurs by reason of the death of one of the parties.[1] Where dissolution occurs for reasons other than death, it provides that " an account shall be taken and rendered of the affairs and business . . . [of the partnership] and division of its assets shall be made in the proportion to the respective capital contribution of the partners." In the absence of an agreement to the contrary the good will of a partnership is an asset of the firm, and a partner appropriating it to his own use must account for its value. *Moore* v. *Rawson*, 185 Mass. 264, 272–273. *Hutchins* v. *Page*, 204 Mass. 284, 288. *Costa* v. *Costa*, 222 Mass. 280, 282. *Kavanaugh* v. *Johnson*, 290 Mass. 587, 595. *Murray* v.

---

[1] The agreement provides that in case of dissolution of the partnership by death of one of the parties, the surviving partner shall account to the legal representatives of the deceased for the latter's interest, exclusive of good will.

*Bateman*, 315 Mass. 113, 114. In the case at bar the judge found (as he could have on the evidence) that the defendant had appropriated the good will of the partnership to his own use. The principles of law applicable in such a situation were set forth in *Hutchins* v. *Page*, 204 Mass. 284, where it was said by Knowlton, C. J., at page 290, "Among the assets . . . appropriated was the good will of the business, which the defendant used and enjoyed as fully as it is ever possible to use such a good will after a purchase of it under an order of court in winding up the affairs of a partnership. A liability to pay for it follows in the same way as the liability to pay for any other part of the assets that he took and appropriated. . . . An appropriation and use of the good will and assets by one partner, with the acquiescence of the other, creates the same liability to account for them and their value as a wrongful appropriation of them. It is equivalent to a purchase. In the present case the liability of the defendant to pay for the good will and other assets of the firm is precisely the same as if the plaintiff had given him a bill of sale of the good will and assets, to be paid for at their fair value, except that, in determining the value of the good will, it is to be estimated as it would have been if disposed of at a judicial sale, that is, at its value, with the right of the plaintiff to set up a competing business among the customers of the firm and others." In the case at bar there is nothing to indicate that the judge, in determining the liability of the defendant, failed to apply the rule set forth in the preceding sentence.

The other questions argued by the defendant but not discussed in this opinion have not been overlooked. We find nothing in them that requires discussion. The final decree, however, is irregular and requires modification. Instead of merely establishing the amount of the defendant's indebtedness to the plaintiff it ought to order the defendant to pay that sum to the plaintiff. See *Malloy* v. *Carroll*, 287 Mass. 376, 391; *Jones* v. *Fraser*, 305 Mass. 147, 149. As so modified the decree is affirmed with costs.

*So ordered.*