Affirmed and Memorandum Opinion filed March 26, 2009








Affirmed and Memorandum Opinion filed March 26, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00390-CV

____________

 

LEO BORRELL, Appellant

 

V.

 

VITAL WEIGHT CONTROL, INC., D/B/A
NEWEIGH,
Appellee

 



 

On Appeal from the 129th
District Court

Harris County, Texas

Trial Court Cause No. 2002-13659

 



 

M E M O R A N D U M   O P I N I O N

A doctor who engages in business activities in the
healthcare field sued a company seeking to recover a finder=s fee or
commission allegedly owed for services rendered in connection with a business
transaction involving a third party.  After receiving jury findings in his
favor, the doctor elected to seek judgment on his quantum-meruit claim;
however, the trial court granted a judgment notwithstanding the verdict and
ordered that the doctor take nothing.  Because the trial evidence conclusively
proved that the services for which the doctor sought compensation were covered
by an express contract, and thus were not recoverable in quantum meruit, we
affirm the trial court=s judgment.  








                        I.  Factual and Procedural Background

Appellant Dr. Leo Borrell is a physician who engages in
business activities in the healthcare field.  Appellee Vital Weight Control,
Inc., d/b/a NeWeigh (hereinafter ANeWeigh@) is a company
that markets and manages bariatric surgery programs for hospitals but is not
itself a healthcare provider.  Diane Crumley is the founder, owner, and
president of NeWeigh.  Borrell and Crumley met in the 1990s, and Borrell
offered to have one of his companies merge with NeWeigh or purchase NeWeigh. 
Crumley declined this offer.  

Later, in October of 2000, Borrell and one of his business
partners, Irvin Gregory, entered into a written contract with NeWeigh.  Under
this contract, Borrell and Gregory promised, among other things, to provide
NeWeigh with an acceptable hospital in which NeWeigh could run a bariatric
surgery program (AOctober Contract@).  The October
Contract expired by its own terms within thirty days.  However, if during the
term of the October Contract, a hospital accepted by NeWeigh or the entity
owning such a hospital acquired NeWeigh, then Borrell and Gregory were entitled
under the October Contract to receive a sales commission of six percent of the
purchase price (hereinafter ACommission@).  In addition,
during the term of the October Contract, NeWeigh gave Borrell and Gregory the
right of first refusal to match the terms and conditions of any offer to
purchase all or any part of NeWeigh (hereinafter ARefusal Right@).  Ninety days
after the termination of the October Contract, the Refusal Right terminated. 
Under the October Contract, NeWeigh does not promise to pay Borrell or Gregory
any consideration for their services other than the Commission and the Refusal
Right.








During the term of the October Contract, however, Borrell
and Gregory did arrange a meeting between NeWeigh and Dynacq International,
Inc. f/k/a Dynacq Healthcare, Inc. (hereinafter ADynacq@), the owner of
Vista Community Medical Center, L.L.C. (hereinafter AVista@) to discuss the
possibility of NeWeigh running a bariatric surgery program for Vista.  Dynacq
submitted a draft agreement to NeWeigh, which NeWeigh rejected.  It is
undisputed that the October Contract terminated by its own terms in November
2000, without Borrell and Gregory having provided an acceptable hospital in
which NeWeigh could run a bariatric surgery program.  Because no such hospital
was provided during the term of the October Contract, there was no hospital
entity that could acquire NeWeigh and no Commission that could accrue to
Borrell and Gregory based on such an acquisition.  The parties also do not
dispute that no offer to purchase all or any part of NeWeigh was made that
would be subject to the Refusal Right under the October Contract.

Although Borrell gave conflicting testimony at trial, he
testified that, after the expiration of the October Contract, he and NeWeigh,
through Crumley, entered into an oral agreement under which NeWeigh would pay
Borrell five percent of the gross revenue NeWeigh received from running a
bariatric surgery program for Vista in exchange for Borrell=s assistance to
NeWeigh in obtaining a contract with Vista.  Borrell also testified that he had
an oral agreement with Dynacq under which Dynacq would pay Borrell five percent
of Dynacq=s gross revenue from the bariatric surgery program
that NeWeigh would run at Vista.  In May 2001, Vista and NeWeigh entered into a
contract under which NeWeigh was to manage Vista=s bariatric
surgery program for three years.  In November 2002, Vista and NeWeigh canceled
the May 2001 contract, and NeWeigh entered into a new contract with another
subsidiary of Dynacq.  Borrell alleges that the substance of the November 2002
contract is the same as the prior contract, with NeWeigh managing the bariatric
surgery program for Vista.    








Because Neweigh refused to pay Borrell any commission based
on a percentage of NeWeigh=s gross revenue from running the bariatric
surgery program for Vista, Borrell sued NeWeigh asserting claims for breach of
contract, promissory estoppel, and quantum meruit.  In his live petition,
Borrell alleges that A[p]rior to conclusion of the [May 2001]
agreement between [NeWeigh] and Vista, [NeWeigh] and Borrell reached an oral
agreement that [NeWeigh] would pay Borrell, on a monthly basis for three years,
a commission of $400 per patient or 5% of the gross fees paid by patients
managed by [NeWeigh], whichever amount was greater.@  Borrell decided
to proceed to trial only on his promissory-estoppel and quantum-meruit claims. 
Following trial, the jury answered questions on these two claims in Borrell=s favor.  NeWeigh
filed a motion for judgment notwithstanding the verdict asserting that (1) the
trial evidence conclusively proved that an express contract covers Borrell=s services, thus
precluding recovery on his quantum-meruit claim, and (2) there was no evidence
of any damages that may be recovered under a promissory-estoppel claim.  

After the trial court granted NeWeigh=s motion for
judgment notwithstanding the verdict as to Borrell=s quantum-meruit
claim, NeWeigh sought judgment notwithstanding the verdict, asserting that (1)
the trial evidence conclusively proved that an express contract covers Borrell=s services, thus
precluding recovery on his promissory-estoppel claim, and (2) there was no
trial evidence of any damages that may be recovered under a promissory-estoppel
claim.  However, Borrell continued to elect recovery under his quantum-meruit
claim and did not seek to recover under his promissory-estoppel claim. 
Therefore, the trial court did not rule on the motion for judgment
notwithstanding the verdict as to the promissory-estoppel claim.  Instead, the
trial court rendered judgment that Borrell take nothing against NeWeigh based
on the court=s granting of the motion for judgment notwithstanding
the verdict as to the quantum-meruit claim.  

                                            II.  Issues Presented

On appeal, Borrell presents the following issues:

(1)     The trial court erred by finding that a
prior written agreement between the parties precluded Borrell=s recovery under quantum meruit.

(2)     The trial
court erred by granting judgment notwithstanding the verdict because there is
evidence to support the jury=s verdict.

III.  Standard of Review








Judgment without or against a jury verdict is proper at any
course of the proceedings only when the law does not allow reasonable jurors to
decide otherwise.  City of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex.
2005).  Accordingly, the test for legal sufficiency is the same for summary
judgments, directed verdicts, judgments notwithstanding the verdict, and
appellate no-evidence review.  Id.  When reviewing the legal sufficiency
of the evidence, we consider the evidence in the light most favorable to Borrell
and indulge every reasonable inference that would support it.  Id.  We
must credit favorable evidence if a reasonable factfinder could and disregard
contrary evidence unless a reasonable factfinder could not.  See id. at
827.  We must determine whether the evidence at trial would enable reasonable
and fair-minded people to find the facts at issue.  See id.  The
factfinder is the only judge of witness credibility and the weight to give to
testimony.  See id. at 819.

                                                   IV.  Analysis

Under Texas law, the general rule is that a plaintiff who
seeks to recover the reasonable value of services rendered or materials
supplied under a quantum-meruit claim may do so only when there is no express
contract covering those services or materials.  See Truly v. Austin, 744
S.W.2d 934, 936 (Tex. 1988).  This rule applies whether the express contract is
a written contract or an oral contract.[1] 
See R.M. Dudley Constr. Co. v. Dawson, 258 S.W.3d 694, 703 (Tex. App.CWaco 2008, pet.
denied); Ramirez Co. v. Housing Auth. of City of Houston, 777 S.W.2d
167, 173 & n.12 (Tex. App.CHouston [14th Dist.] 1989, no writ). 
There were numerous conflicts in Borrell=s testimony. 
Among other things, Borrell testified as follows:

!       After the expiration of the October Contract,
NeWeigh and Borrell entered into an oral agreement under which NeWeigh would
pay Borrell five percent of the gross revenue NeWeigh received from running a
bariatric surgery program for Vista in exchange for Borrell=s assistance to NeWeigh in
obtaining a contract with Vista.

!       On behalf of NeWeigh, Crumley verbally agreed
to indefinitely extend the October Contract.








!       Borrell had an oral agreement with Dynacq
under which Dynacq would pay Borrell five percent of Dynacq=s gross revenue from the bariatric
surgery program that NeWeigh would run at Vista.  

!       NeWeigh and
Borrell entered into an oral agreement under which NeWeigh would pay Borrell
five percent of the gross revenue NeWeigh received from running a bariatric
surgery program for Vista or NeWeigh would pay Borrell five percent of Dynacq=s gross revenue
from the bariatric surgery program that NeWeigh would run at Vista, after
Dynacq had paid that amount to NeWeigh.

Despite conflicts and inconsistencies in Borrell=s trial testimony
as to the terms of his oral agreement with NeWeigh, Borrell consistently
testified that he had some sort of oral agreement governing his compensation
for services rendered to NeWeigh to help it obtain a contract with Vista. 
Crumley consistently denied that she ever agreed to pay Borrell any part of
NeWeigh=s gross revenue. 
However, Crumley testified that she did not put the thirty-day termination
provision in the October Contract and that, even though the October Contract
had terminated, she still would honor the October Contract.  Under the
applicable standard of review, the trial evidence conclusively proves an
express contract that covers the services whose reasonable value Borrell sought
to recover in his quantum-meruit claim. See Truly, 744 S.W.2d at 936B38.  








Borrell has not asserted in his issues nor has he presented
this court with argument that the facts of this case fall within one of the
exceptions to the general rule the Supreme Court of Texas set forth in Truly. 
See id. (mentioning exceptions to general rule if (1) plaintiff
partially performs an express contract but, because of defendant=s breach, is
prevented from completing the contract, (2) plaintiff partially performs an
express contract that is unilateral in nature, or (3) plaintiff provides labor
or materials under a construction contract and satisfies certain
requirements).  Even if Borrell had argued that one of these exceptions apply,
under the applicable standard of review, there is no evidence raising a fact
issue as to the applicability of any of these exceptions.  No evidence raises a
fact issue as to whether (1) NeWeigh=s alleged breach
of contract prevented Borrell from completing his contract; (2) Borrell
partially performed an express contract that is unilateral in nature;[2]
or (3) Borrell=s services were rendered under a construction
contract.  Therefore, the Truly exceptions do not provide a basis for
reversing the trial court=s judgment.  

Borrell also asserts that there was some evidence
supporting the jury=s findings that  Borrell performed
compensable work for NeWeigh and that $111,000 was the reasonable value of this
compensable work for which NeWeigh did not pay Borrell.  However, even
presuming that these findings are supported by some evidence, Borrell may not
recover under his quantum-meruit claim if the evidence conclusively proves that
recovery is barred under the Truly rule.  See id. 

                                                 V.  Conclusion

Under the applicable standard of review, the trial court
did not err in rendering its judgment notwithstanding the verdict. 
Accordingly, we overrule Borrell=s two appellate
issues,[3]
and affirm the trial court=s judgment.

 

 

/s/      Kem Thompson Frost

Justice

 

Panel
consists of Justices Frost, Seymore, and Guzman.









[1]  For this reason, to the extent, Borrell focuses only
on the written October Contract in his first issue and in his argument, he
applies the wrong analysis.





[2]  To the extent Borrell testified that the services
were covered by the October Contract, that contract, under its unambiguous
language, is bilateral, not unilateral.  As to other purported oral agreements,
no trial evidence raises a fact issue as to whether Borrell partially performed
these agreements.





[3]  In light of this disposition, we need not and do not address NeWeigh=s conditional cross-points.